UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN ALLEN BOOTH,

            Petitioner,

  v.

ERIC JACKSON,

            Respondent.

CASE NO. C20-6264 BHS

ORDER

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable Theresa L. Fricke, United States Magistrate Judge, Dkt. 20, and Petitioner's Objections to the R&R, Dkt. 27. Petitioner John Allen Booth challenges his state conviction under 28 U.S.C. § 2254, asserting that the State[1] violated his constitutional rights by listening to conversations he had with his attorney and his private investigator, by refusing to allow him to complete his testimony at his trial, and by ordering him to pay restitution that he could not afford to pay. Dkt. 1. He also asserts that

---

[1] This is a habeas petition properly asserted against the Superintendent of Monroe Correctional Complex, Eric Jackson, where Booth was housed at the time he filed the petition. For clarity, the Court refers to the respondent in this case as the State.

ORDER - 1

he was denied effective assistance because his counsel failed to call a cell phone expert and alibi witnesses at trial. *Id.* The R&R recommends denying Booth's habeas petition in its entirety. Dkt. 20.

## I. BACKGROUND

Booth was sentenced in Lewis County Superior Court in December 2011 to life without parole after a jury found him guilty on two counts of Murder in the First Degree, one count of Murder in the Second Degree, one count of Attempted Murder in the First Degree, one count of Extortion, and one count of Unlawful Possession of a Firearm. Dkt. 1. He is currently incarcerated at Stafford Creek Corrections Center but, at the time of filing, he was incarcerated at Monroe Correctional Complex.

Following his initial conviction and sentencing, Booth directly appealed to the Washington State Court of Appeals. *Id.* The Court of Appeals affirmed his conviction in August 2014. *Id.* The Washington Supreme Court denied review. *Id.* Booth also collaterally attacked his sentence by filing a Motion to Vacate Judgment and Sentence under Washington Criminal Rule 7.8 and three Personal Restraint Petitions[2] ("PRP"), all of which were denied and all of which he appealed. *Id.* The exact arguments Booth raised, their reasons for denial, and other information regarding the long procedural history of this case are extensively detailed in the State's Answer to Booth's habeas petition, Dkt. 10, and in the R&R, Dkt. 27.

---

[2] Booth initially filed two of his PRPs as CrR 7.8 motions. Those motions were converted to PRPs by the Washington Court of Appeals. *See* Dkt. 10 at 8–10.

ORDER - 2

Booth filed the instant Petition for Writ of Habeas Corpus, Dkt. 1, on December 31, 2022. He argues nine grounds for habeas relief, but his primary argument is that the State deprived him of his Sixth Amendment right to counsel by eavesdropping on his conversations with his attorney and his private investigator, which undermined his confidence in his attorney. *Id.*; *see also* Dkts. 16, 27. The R&R recommends dismissing all nine of Booth's claims and denying his habeas petition. Dkt. 20. Booth objects only to the R&R's recommended denial of his claims relating to the State's alleged eavesdropping. Dkt. 27.

Because the parties agree that Booth properly presented his claims to the Washington Supreme Court and exhausted his state remedies, *see* Dkt. 10 at 11, the Court will not repeat the entire procedural history here. Rather, the Court will address lower court findings and conclusions as necessary below.

## II.  DISCUSSION

**A.   Legal Standard**

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3). A proper objection requires specific written objections to the findings and recommendations in the R&R. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Objections to a R&R are not a vehicle to relitigate the same arguments carefully considered and rejected

1  by the Magistrate Judge. *See, e.g.*, *Fix v. Hartford Life & Accident Ins. Co.*, CV 16-41-M-DLC-JCL, 2017 WL 2721168, at *1 (D. Mont. June 23, 2017) (collecting cases).

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard is "difficult to meet" and "highly deferential" such that state court decisions are to be "given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotations omitted). Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* "When more than one state court has adjudicated

a claim, [the Court] analyze[s] the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991)). As determined by the R&R, the last reasoned decision for Grounds 1–4 and 9 is the Washington Court of Appeals' opinion affirming the denial of Booth's first CrR 7.8 motion, Dkt. 20 at 29, and the last reasoned decision for Grounds 5–8 is the Washington Supreme Court Deputy Commissioner's ruling dismissing Booth's 2016 PRP, *id.* at 47. *Id.* at 9–10.

Booth's proposed grounds for habeas relief, the State's opposition to those grounds, the R&R's recommendations, and Booth's objections are discussed below.

**B.     Grounds (1)–(4) and (9): Intrusion into Attorney-Client Relationship**

Booth's Petition argues that the State violated his constitutional rights by listening to conversations he had with his attorney and his private investigator over the phone, in court, and in his attorney visiting room. Dkt. 1 at 5–12. He argues that each of these incidents violated his constitutional right to counsel and that, in the alternative, they violated his constitutional right to counsel when considered cumulatively.[3] *Id.* at 19. Specifically, Booth's main assertion appears to be that the State undermined his confidence in counsel by intentionally intercepting his communications with his attorney and his private investigator. The State argues that it did not intentionally intercept

---

[3] As the R&R explains, Dkt. 20 at 16 n.9, Booth's traverse characterizes his ninth claim as asserting that all of the eight other claims in his petition amount to a Sixth Amendment violation when considered cumulatively. *See* Dkt. 16 at 44–45. Booth's petition, however, asserts that the Court should consider a cumulative Sixth Amendment violation regarding "all the ways that the State interfered with [his] right to counsel." Dkt. 1 at 19. Therefore, the Court follows the R&R in construing Booth's ninth ground for relief as relating only to the ways in which he alleges the State interfered with his right to counsel, which he raises in claims (1)–(4). *See* Dkt. 20 at 16 n.9.

ORDER - 5

1 Booth's attorney-client communications, that it did not violate Booth's constitutional
2 right to counsel, and that the Court must give deference to the Washington Court of
3 Appeal's decision which affirmed the trial court's ruling that the State did not violate
4 Booth's constitutional rights. Dkt. 10 at 15–23.

5 The R&R recommends that the Court dismiss Booth's right to counsel claims
6 because he failed to show that the Washington Court of Appeals erred or that he was
7 prejudiced, because none of the overheard conversations produced evidence that was
8 offered at trial. Dkt. 20 at 12–17. Booth objects, arguing that the R&R misunderstands his
9 claim. Dkt. 27. Specifically, Booth argues that he has established prejudice because the
10 record shows that the State was listening to his conversations with his counsel and private
11 investigator, that he was aware of the State's eavesdropping activities, and that their
12 eavesdropping undermined his confidence in his counsel. *Id.* He also takes issue with the
13 R&R's interpretation of relevant case law, arguing that *United States v. Irwin*, 612 F.2d
14 1182 (9th Cir. 1980), clearly establishes that the petitioner can show prejudice in a habeas
15 right to counsel case by showing that the State undermined the petitioner's confidence in
16 counsel. Dkt. 27.

17 The State's intrusion into the attorney-client relationship is not *per se* violative of
18 the Sixth Amendment. *See Weatherford v. Bursey*, 429 U.S. 545, 550–52 (1977); *see also*
19 *Irwin*, 612 F.2d at 1185. Government interference with the attorney-client relationship
20 can violate a defendant's Sixth Amendment right when it substantially prejudices the
21 defendant. *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985).

22

The Supreme Court has explained that "when conversations with counsel have been overheard, the constitutionality of the conviction depends on whether the overheard conversations have produced, directly or indirectly, any of the evidence offered at trial." *Weatherford*, 429 U.S. at 552 (1977). But the Ninth Circuit has recognized that prejudice can manifest in other ways besides gaining evidence, such as "from the prosecution's use of confidential information pertaining to the defense plans and strategy, *from government influence which destroys the defendant's confidence in his attorney*, and from other actions designed to give the prosecution an unfair advantage at trial." *Irwin*, 612 F.2d at 1187 (emphasis added) (footnote omitted).

In *Irwin*, the Ninth Circuit suggested that there are two lines of cases that have developed in this area. The first type of case is demonstrated by *Weatherford*. There, an undercover agent was arrested and charged with a criminal defendant in an attempt to maintain his undercover status. *Weatherford*, 429 U.S. at 547. The undercover agent then sat in on meetings with the criminal defendant and his attorney, without their knowledge of his true identity. *Id.* at 547–48. The Supreme Court concluded that the undercover agent had not violated the defendant's Sixth Amendment rights because he never passed along any evidence and no evidence gained from those meetings was used at trial. *Id.* at 558. Therefore, the Court concluded, the defendant was not prejudiced. *Id.*

The second type of case is demonstrated by *People v. Moore*, 57 Cal. App. 3d 437 (1976). There, the local district attorney's office persuaded the defendant, outside the presence and without the knowledge of his defense counsel, to work undercover with them and to testify for the prosecution in an unrelated case. *Id.* at 440. The district

attorney's office explicitly told Moore not to consult with his counsel about their dealings and falsely told him that "his attorney was inadequate and had been disbarred." *Id.* The court in that case concluded that Moore had been denied the aid of counsel at a critical stage of proceedings in part because his counsel did not have the opportunity to negotiate a plea agreement on his behalf because of the State's disparagement of his counsel. *Id.* at 442. The court held that the state violated Moore's right to counsel and right to due process. *Id.* In *Irwin*, the Ninth Circuit recognized this second line of cases as representing another way to establish the prejudice prong of a Sixth Amendment violation. 612 F.2d at 1187.

It is clear from the case law that Booth must establish prejudice to establish a Sixth Amendment violation. It is also clear, from *Irwin*, that prejudice can be established "from government influence which destroys the defendant's confidence in his attorney." 612 F.2d at 1187. While Booth has repeatedly framed his argument in this manner, and has discussed *Irwin* for this proposition, *see, e.g.*, Dkt. 16 at 21, the State has not. The State, and each court that has reviewed this case thus far, have instead framed Booth's argument as a complaint that the State intercepted his privileged communications. *See, e.g.*, Dkt. 10 at 16. The crux of Booth's complaint, as the Court understands it, is not that he was prejudiced because the State intercepted any particular communication, but rather that the State's repeated interference prejudiced him by undermining his confidence in counsel and his ability to participate in his own defense. Under *Irwin*, that is a viable prejudice argument and one that has not yet been fully briefed by the State.

This misunderstanding and misframing at Booth's evidentiary hearing created another problem—he did not have the opportunity to testify about his prejudice argument. The evidentiary hearing judge sustained the State's objection to Booth's attorney's question about whether Booth had lost confidence in his trial counsel, opining that such testimony was irrelevant. Dkt. 11-2, Ex. 23 at 494:2–495:23. Such testimony may have been irrelevant if the only way to establish prejudice was to show that intercepted information was passed along to the prosecution or used at trial. But that ruling ignores *Irwin* and Booth's own framing of his prejudice argument. The problem, as explained by Booth, is that "[t]he state cannot cry that Booth did not establish prejudice and then when Booth does attempt to establish prejudice under *Irwin* or *Bursey*, refuse to let Booth testify to it." Dkt. 16 at 19.

Under the State's view, prison officials could willfully monitor a criminal defendant's privileged communications with his counsel without violating the Sixth Amendment, so long as no information was ever passed along to the prosecutor or used at trial. This raises two large concerns. The first, as Attorney Hunko pointed out at the evidentiary hearing, is that it is often impossible to know where the prosecution learned certain information. Hunko testified that he would never have known whether the prosecution gained any information from listening in on his privileged conversations with his client. Dkt. 11-2, Ex. 21 at 137:4–12 ("I wouldn't know if [any testimony] came from something . . . I said or something [the prosecution] knew."). The second concern is that the practice of monitoring a defendant's privileged communications could chill that defendant's ability to freely communicate with his counsel and participate in his own

defense, which is a vital part of trial preparation. It cannot be the case that the State could engage in such activity and never violate the Sixth Amendment.

Nevertheless, the Court acknowledges that the question here, and in most cases, is not that simple. Booth has not established that the State's eavesdropping caused the breakdown in his relationship with counsel. Specifically, he has not shown that there was information he would have shared with counsel that could have assisted in his defense if he had not believed his communications were being monitored. Further, it is not clear whether the State's interference would have to be deliberate, intentional, or willful under this framework. If deliberateness, intentionality, or willfulness is required, the trial court found, and the Court of Appeals agreed, that the State did not intentionally monitor and intercept Booth's conversations with counsel. Dkt. 20 at 36, 39. At this juncture, the Court sees no evidence that would justify a departure from that finding.

The Court previously denied Booth's Motion to Appoint Counsel, Dkt. 25; Dkt. 26. Upon further review, appointment of counsel is appropriate. While Booth has demonstrated an ability to articulate his claims, the issue before the Court is not well-developed. The Court would benefit from an attorney's further analysis of Booth's claims in light of *Irwin*.

The Court therefore APPOINTS Booth counsel. The parties are ordered to file supplemental briefing on Booth's grounds for relief (1)–(4) and (9). Specifically, the parties should brief the viability of Booth's argument that he was prejudiced by the State's interference because it made him lose confidence in his counsel, and whether Booth must prove that the State intended to interfere with Booth's attorney-client

1 | relationship. The parties shall file simultaneous briefing. Opening briefs must be filed by
2 | October 7, 2022. Response briefs must be filed by October 28, 2022. No reply briefs will
3 | be permitted. The Clerk is directed to RENOTE Booth's Objections to the R&R, Dkt. 27,
4 | for consideration on the Court's October 28, 2022 calendar.

5 | **C.   Grounds (5) and (6): Evidentiary Ruling and Restitution Order**

6 | Booth's fifth ground for relief asserts that the State violated his Fourteenth
7 | Amendment due process rights by refusing to let him testify "that he lost confidence in
8 | his own attorney because of the State's eavesdropping activities" Dkt. 1 at 12. The State
9 | argues that this claim is not cognizable because it challenges a state evidentiary ruling
10 | which is not a proper ground for habeas relief. Dkt. 10 at 23–25. The State also argues
11 | that the evidentiary ruling was correct because Booth's testimony about his relationship
12 | with his attorney was irrelevant to his motion to vacate. *Id.* The R&R recommends
13 | dismissing Booth's fifth ground for relief because the evidence is not relevant to the issue
14 | of whether Booth was substantially prejudiced by interference with the attorney-client
15 | relationship, and it does not raise a federal constitutional claim for relief. Booth does not
16 | object.

17 | "[F]ederal habeas relief is not available to redress alleged procedural errors in state
18 | post-conviction proceedings." *Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998),
19 | *overruled on other grounds by Apelt v. Ryan*, 878 F.3d 800, 827 (9th Cir. 2017). Booth's
20 | fifth ground is not a plausible ground for habeas relief. Further, as explained above, it
21 | was well-established that Booth was unsatisfied with his trial counsel. Even if the
22 | evidence had been relevant, it would have been properly excluded as cumulative.

1       As to Booth's fifth ground for relief, Booth's habeas petition is DENIED, the
2  R&R is ADOPTED, and the fifth ground is DISMISSED with prejudice.
3       Booth's sixth ground for relief argues that the State violated his Eighth
4  Amendment rights by refusing to remove his restitution order even though he was
5  sentenced to life without parole, leaving him permanently indigent. Dkt. 1 at 14. The
6  State argues that this is also an improper ground for habeas relief because it does not
7  satisfy § 2254's "in custody" requirement. Dkt. 10 at 25–28. The R&R recommends
8  dismissing Booth's sixth ground for relief because a habeas petition is not the proper
9  channel for challenging a restitution order. Dkt. 20 at 18–19. Booth does not object.
10      "[T]he imposition of a fine or the revocation of a license is merely a collateral
11 consequence of conviction, and does not meet the 'in custody' requirement" for a § 2254
12 habeas petition. *Williamson v. Gregoire*, 151 F.3d 1180, 1183 (9th Cir. 1998). Booth's
13 sixth ground is not a plausible ground for habeas relief.
14      As to Booth's sixth ground for relief, Booth's habeas petition is DENIED, the
15 R&R is ADOPTED, and the sixth ground is DISMISSED with prejudice.

16 **D.    Grounds (7) and (8): Ineffective Assistance of Counsel**

17      In his seventh and eighth grounds for relief, Booth argues that he was denied his
18 Sixth Amendment right to effective assistance of counsel because his attorney "failed to
19 call/consult the expert witness in cell phone triangulation" upon which his defense relied
20 and "failed to investigate his alibi witnesses." Dkt. 1 at 16–17. The State argues that the
21 Court should defer to the Washington Supreme Court Commissioner's decision that
22 Booth's ineffective assistance claims were meritless under the "doubly deferential"

§ 2254(d) standard because it was not unreasonable. Dkt. 10 at 28–40. The R&R recommends dismissing Booth's seventh and eighth grounds for relief because the Washington Supreme Court Commissioner's determination was not an unreasonable application of *Strickland*. Dkt. 20 at 26. Booth did not object.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court evaluates ineffective assistance of counsel claims under the two-prong test set forth in *Strickland*. To prevail, the prisoner must prove (1) that his counsel's performance was deficient, and (2) that this deficient performance was prejudicial. *Id.*

To establish deficient performance, Booth must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. The Court must apply a "strong presumption" that counsel's conduct falls within the "wide range of reasonable professional assistance." *Id.* at 689. With respect to prejudice, Booth must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*

Federal habeas courts review ineffective assistance of counsel claims through a "doubly deferential" lens. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). On federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Court agrees with the R&R that Booth failed to show that the Washington Supreme Court

commissioner's decision, Dkt. 20 at 47–57, that Booth's ineffective assistance of counsel claims were meritless was unreasonable.

Moreover, Booth has not demonstrated that his counsel's performance was deficient or that his counsel's allegedly deficient performance was prejudicial. The Court agrees with the reasoning of the R&R on this point and need not repeat it here other than to say that Booth failed to demonstrate that his counsel's failure to call a cell phone triangulation expert witness or alibi witnesses was unsound trial strategy or that it was prejudicial to Booth. The State presented a plethora of evidence against Booth, including two eyewitnesses who place him at the scene of the crime and his DNA on the murder weapon. The Court concludes that the Commissioner's application of *Strickland* was reasonable.

As to Booth's seventh and eighth grounds for relief, Booth's habeas petition is DENIED, the R&R is ADOPTED, and the seventh and eighth grounds are DISMISSED with prejudice.

### III.  ORDER

The Court having considered the R&R, Petitioner's objections, and the remaining record, does hereby find and order as follows:

(1) The R&R is **ADOPTED in part**;

(2) The Court **RESERVES RULING** on claims (1)–(4) and (9);

(3) Booth's claims (5)–(8) are **DISMISSED with prejudice**;

(4) The Court **APPOINTS** Booth counsel;

(5) The CJA Administration is **DIRECTED** to assign Booth counsel; and

(6)     The Clerk is directed to send copies of this Order to Booth, to Magistrate Judge Theresa L. Fricke, to the CJA Administration, and to any other party that has appeared in this action.

Dated this 9th day of September, 2022.

*[signature]*
BENJAMIN H. SETTLE
United States District Judge