1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN ALLEN BOOTH,

                      Petitioner,

   v.

ERIC JACKSON,

                    Respondent.

CASE NO. C20-6264 BHS

ORDER

This matter comes before the Court on Magistrate Judge Theresa L. Fricke's

Report and Recommendation ("R&R"), Dkt. 20, Petitioner John Allen Booth's

Objections to the R&R, Dkt. 27, and the parties' supplemental briefing, Dkts. 36, 37, 38,

41. Remaining in this case are Booth's 28 U.S.C. § 2254 challenges to his state

conviction, asserting that the State[1] violated his constitutional rights by listening to

conversations he had with his attorney and his private investigator. Dkt. 1; *see also* Dkt.

28.

---

[1] This is a habeas petition properly asserted against the Superintendent of Monroe Correctional Complex, Eric Jackson. Booth was housed at Monroe Correctional Complex when he filed the petition. For clarity, the Court refers to the respondent in this case as the State.

## I.    BACKGROUND

Booth was sentenced in Lewis County Superior Court in December 2011 to life without parole after a jury found him guilty of two counts of Murder in the First Degree, one count of Murder in the Second Degree, one count of Attempted Murder in the First Degree, one count of Extortion, and one count of Unlawful Possession of a Firearm. Dkt. 1. He is currently incarcerated at Stafford Creek Corrections Center but, at the time of filing, he was incarcerated at Monroe Correctional Complex.

Following his conviction and sentencing, Booth directly appealed to the Washington State Court of Appeals. *Id.* The Court of Appeals affirmed his conviction in August 2014. *Id.* The Washington Supreme Court denied review. *Id.* Booth also collaterally attacked his sentence by filing a Motion to Vacate Judgment and Sentence under Washington Criminal Rule 7.8 and three Personal Restraint Petitions[2] ("PRPs"), all of which were denied and the denials of which were affirmed. *Id.* The exact arguments Booth raised, the reasons they were denied, and other information regarding the long procedural history of this case are extensively detailed in the State's Answer to Booth's habeas petition, Dkt. 10, and in the R&R, Dkt. 27.

Booth filed his Petition for Writ of Habeas Corpus, Dkt. 1, on December 31, 2022. He argues nine grounds for habeas relief, but his primary argument is that the State deprived him of his Sixth Amendment right to counsel by eavesdropping on his conversations with his attorney and his private investigator, which undermined his

---

[2] Booth initially filed two of his PRPs as CrR 7.8 motions. Those motions were converted to PRPs by the Washington Court of Appeals. *See* Dkt. 10 at 8–10.

1    confidence in his attorney. *Id.*; *see also* Dkts. 16, 27. The R&R recommends dismissing

2    all nine of Booth's claims and denying his habeas petition. Dkt. 20. Booth objected to

3    only the R&R's recommended denial of his claims relating to the State's alleged

4    eavesdropping. Dkt. 27.

5         The Court previously adopted the R&R as to Booth's fifth, sixth, seventh, and

6    eighth grounds for relief. Dkt. 28. It reserved ruling on Booth's first, second, third,

7    fourth, and ninth grounds for relief, all relating to the State's alleged eavesdropping. *Id.* It

8    also appointed Booth counsel and ordered the parties to provide supplemental briefing on

9    Booth's remaining grounds for relief. *Id.*

10        The parties provided supplemental briefing on Grounds (1)–(4) and (9), but

11   Booth's counsel also seeks to revive two of Booth's previously-dismissed claims: Ground

12   (8)—that Booth's trial counsel was ineffective in failing to call a cell phone triangulation

13   expert—and Ground (7)—that Booth's trial counsel was ineffective in failing to call

14   identified alibi witnesses. *See* Dkt. 37. Booth argues that the Court erred in previously

15   concluding that the state court adjudicated those claims on the merits. *Id.* The State

16   argues that the claims have been adjudicated on the merits and that the Court properly

17   deferred to the state court's rulings. Dkt. 38.

18        Booth's proposed revival of Grounds (7) and (8) and the parties' continued dispute

19   regarding Grounds (1)–(4) and (9) are discussed in turn.

20   //

21   //

22   //

## II.   DISCUSSION

**A.   Legal Standard**

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard is "difficult to meet" and "highly deferential" such that state court decisions are to be "given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotations omitted). Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* "When more than one state court has adjudicated

1  a claim, [the Court] analyze[s] the last reasoned decision." *Barker v. Fleming*, 423 F.3d

2  1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991)).

3       As determined by the R&R, the last reasoned decision for Grounds (1)–(4) and (9)

4  is the Washington Court of Appeals' opinion affirming the denial of Booth's first CrR 7.8

5  motion, Dkt. 20 at 29–46. The last reasoned decision for Grounds (7) and (8) is the

6  Washington Supreme Court Deputy Commissioner's ruling dismissing Booth's 2016

7  PRP, *id.* at 47–57.

8  **B.    Grounds (7) and (8)**

9       Booth asks the Court to reconsider its dismissal of Grounds (7) and (8), arguing

10  that the grounds were not adjudicated on the merits before the state court, that Booth's

11  procedural default on the two grounds is excused, and that the grounds are substantial and

12  meritorious. Dkt. 37 at 15–40. The State argues that reconsideration is improper because

13  the Court correctly ruled that the state court adjudicated the claim on the merits. Dkt. 38

14  at 14–18.

15       The Court interprets Booth's motion as one for reconsideration. Under Local Rule

16  7(h)(1), motions for reconsideration are disfavored and will ordinarily be denied unless

17  there is a showing of (a) manifest error in the ruling, or (b) facts or legal authority which

18  could not have been brought to the attention of the court earlier, through reasonable

19  diligence. The term "manifest error" is "an error that is plain and indisputable, and that

20  amounts to a complete disregard of the controlling law or the credible evidence in the

21  record." *Black's Law Dictionary* (11th ed. 2019).

22

1    Reconsideration is an "extraordinary remedy, to be used sparingly in the interests

2    of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*,

3    229 F.3d 877, 890 (9th Cir. 2000). "[A] motion for reconsideration should not be granted,

4    absent highly unusual circumstances, unless the district court is presented with newly

5    discovered evidence, committed clear error, or if there is an intervening change in the

6    controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d

7    873, 880 (9th Cir. 2009). Neither the Local Civil Rules nor the Federal Rules of Civil

8    Procedure, which allow for a motion for reconsideration, are intended to provide litigants

9    with a second bite at the apple. A motion for reconsideration should not be used to ask a

10   court to rethink what the court had already thought through—rightly or wrongly. *Defs. of*

11   *Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Mere disagreement with a

12   previous order is an insufficient basis for reconsideration, and reconsideration may not be

13   based on evidence and legal arguments that could have been presented at the time of the

14   challenged decision. *Haw. Stevedores, Inc. v. HT & T Co.*, 363 F. Supp. 2d 1253, 1269

15   (D. Haw. 2005). "Whether or not to grant reconsideration is committed to the sound

16   discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama*

17   *Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

18          "A motion for reconsideration shall be plainly labeled as such" and "shall be filed

19   within fourteen days after the order to which it relates is filed." Local Rules W.D. Wash.

20   LCR 7(h)(2). Jackson does not argue that Booth's motion was untimely, but the Court

21   notes it was filed well after the deadline for filing a motion for reconsideration.

22

1      Booth concedes that his motion, if interpreted as one for reconsideration, is

2  untimely. However, he argues that the Court can still consider the motion under Federal

3  Rules of Civil Procedure 54(b) or 60(b). Dkt. 37 at 17–18.

4      Despite its untimeliness, the Court will consider Booth's motion for

5  reconsideration because Booth was previously pro se and the Court has since appointed

6  him counsel. Further, the Court agrees that reconsideration is appropriate in this case

7  under Federal Rule of Civil Procedure 60, which allows a court to review its own

8  previously entered order within a reasonable time, not to exceed one year.

9     **1.**     **Booth Procedurally Defaulted on Grounds (7) and (8).**

10      The procedural default[3] rule bars federal courts from considering a claim when it

11  is clear the state court would hold the claim to be procedurally barred. *Franklin v.*

12  *Johnson*, 290 F.3d 1223, 1230–31 (9th Cir. 2002). The state court's procedural rule must

13  be both adequate to support the judgment and independent of federal law to bar federal

14  habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Cooper v. Brown*,

15  510 F.3d 870, 924 (9th Cir. 2007). If the state court's rule was firmly established and

16  regularly followed at the time of petitioner's procedural default, the rule is adequate.

17  *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1991). "A state procedural rule is

18  considered an independent bar if it is not interwoven with federal law or dependent upon

19

20       [3] Unlike the typical procedural bar case, the petitioner, rather than the state, argues that the underlying claim is procedurally barred. While procedural default is considered an affirmative defense, the Ninth Circuit has made clear that the government cannot prevent the petitioner from attempting to

21  show that the procedural bar is excused, entitling him to de novo review, "by simply refraining from raising the procedural bar." *Hill v. Glebe*, 654 F. App'x 294, 295 (9th Cir. 2016). In fact, "[t]he federal courts can apply the procedural bar sua sponte." *Id.* (citing *Chaker v. Crogan*, 428 F.3d 1215, 1220 (9th

22  Cir. 2005)).

a federal constitutional ruling." *Mahoney v. Glebe*, 2010 WL 55894, at *11 (citing, *inter alia*, *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)). "A state ground is independent and adequate only if the last state court to which the petitioner presented the claim 'actually relied' on a state rule that was sufficient to justify the decision." *Carter v. Giurbino*, 385 F.3d 1194, 1197 (9th Cir. 2004).

If the state courts would find petitioner's federal claim barred pursuant to an independent and adequate state rule, federal review of that claim is barred unless the petitioner can demonstrate cause for the default and prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *see also Robinson v. Schriro*, 595 F.3d 1086, 1100 & n.10 (9th Cir. 2010).

The state rule at issue here is the "*In re Rice* bar," under which "the [state] court simply determines if the petitioner has adequately briefed the claim." *Mahoney*, 2010 WL 55894, at *11 (citing, *inter alia*, *In re Dyer*, 143 Wn.2d 384, 397 (2001)); *see also In re Rice*, 118 Wn.2d 876, 886 (1992) (en banc). Under the *In re Rice* bar, "[t]he state court does not consider the merits of the claim in deciding whether to apply the bar. Consequently, the state rule is based upon state law, and it is 'independent.'" *Id.*

The bar is also adequate. It was firmly established and regularly followed at the time of Booth's default as it "was announced, at the latest, in 1992, when the Washington Supreme Court issued the *Rice* opinion." *Id.*

Finally, the State court actually relied on the *In re Rice* bar. In relation to Booth's grounds for relief based on his counsel's failure to call a cell phone triangulation expert

1    and failure to call alibi witnesses, the Commissioner rested his ruling on Booth's failure

2    to provide sufficient evidence to obtain a reference hearing. *See* Dkt. 20 at 53 ("This is

3    not competent evidence for purposes of obtaining a reference hearing. *See Rice*, 118

4    Wn.2d at 886."); Dkt. 20 at 54 ("Had he [waived attorney-client confidentiality] and

5    obtained a declaration from defense counsel corroborating his claims about alibi

6    witnesses, Mr. Booth might be able to establish a sufficient factual basis for a reference

7    hearing.").

8          The Court agrees that, in ruling that Booth did not put forth sufficient evidence to

9    warrant a reference hearing under *In re Rice*, the Commissioner made a procedural

10   ruling. Booth procedurally defaulted on Grounds (7) and (8).

11         Nevertheless, the Commissioner also made a merits ruling on Ground (8), which

12   the Court can and does consider. As explained further below, the Court therefore applies

13   deference to the Commissioner's merits ruling on Ground (8) and this ground remains

14   dismissed. *See* Dkt. 28 (Order dismissing Ground (8) with prejudice).

15         There is no merits ruling as to Ground (7). Thus, the Court must consider whether

16   Booth's default is excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). As explained

17   further below, the Court concludes that Booth's default is excused and that a hearing is

18   necessary to determine whether Booth's trial counsel was ineffective.

19         **2.     The Commissioner Made a Simultaneous Merits Ruling on Ground (8).**

20         The Commissioner's ruling was both procedural and on the merits. He first made a

21   procedural ruling—that Booth failed to provide sufficient evidence for a reference

22

1      hearing—and then made a merits ruling—that a cell phone triangulation expert would not

2      have changed outcome of case.

3          This is contrary to Judge Pechman's ruling in *Mothershead* where she concluded

4      that a state court's ruling must be considered procedural even if that court also ruled on

5      the merits. Judge Pechman cited *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003),

6      noting: "Where a state court both applies a procedural rule to deny a claim and

7      alternatively opines that the claim lacks merit, procedural default still applies." No. 21-

8      cv-5186 MJP-JRC, 2022 WL 474079, at \*2 (W.D. Wash. Feb. 16, 2022). *Bennett*, and

9      other cases applying this same rule, stand for the proposition that the federal court must

10      consider the procedural default *first* and, if the claim is procedurally defaulted, the federal

11      court should not proceed to review the state court's merits ruling.

12          The difference here, and in *Mothershead*, is that the petitioner is arguing that the

13      procedural default is excused. Assuming the procedural default is, in fact, excused, the

14      Court would then need to proceed to consider the claim on the merits, which would

15      include affording any state court merits decision proper deference. In other words,

16      *Bennett* does not preclude the federal court from considering the state court's merits

17      ruling if the procedural default is excused. *Bennett* means only that the federal court

18      cannot reverse the state court's merits ruling if the claim is procedurally defaulted

19      without excuse. This conclusion is supported by several Ninth Circuit decisions. *See, e.g.*,

20      *Clabourne v. Ryan*, 745 F.3d 362, 383 (9th Cir. 2014) (holding that Antiterrorist and

21      Effective Death Penalty Act ("AEDPA") deference applied to the state court's

22      "alternative holding on the merits"), *overruled on other grounds by McKinney v. Ryan*,

813 F.3d 798 (9th Cir. 2015); *Michaels v. Davis*, 51 F.4th 904, 936–37 (9th Cir. 2022)

(reviewing the state court's alternative merits ruling under AEDPA deference after

concluding the petitioner's procedural default was excused).

The Commissioner's initial ruling on Booth's ineffective assistance claim

regarding a cell phone triangulation expert was procedural. The Commissioner stated that

Booth "fail[ed] to provide a proper foundation for [the expert's] alleged expertise"

because he did not provide a curriculum vitae establishing the expert's expertise and

because the expert "fail[ed] to explain his scientific methods or how he otherwise arrived

at his conclusory assertion that Mr. Booth was not in the vicinity of his crimes." Dkt. 20

at 52–53. Ultimately, the Commissioner concluded that Booth did not provide

"competent evidence for purposes of obtaining a reference hearing" under the *In re Rice*

bar. *Id.* at 53. Failure to meet the standard for a reference hearing under *In re Rice* is an

adequate and independent state law ground barring federal review. *See Mahoney*, 2010

WL 55894, at *11.

The Commissioner, however, went on to make a merits ruling. He explained that

the expert's conclusion contradicted Booth's own version of events as well as the

accounts of two witnesses who put him at the scene of the crime, including one witness

who "recalled being shot by Mr. Booth." Dkt. 20 at 53. He also explained that the expert

would have been subject to cross-examination and possibly rebuttal evidence from the

State's own cell phone expert. *Id.* The Commissioner concluded that "Booth [did not]"[4]

---

[4] The Commissioner's ruling states verbatim: "In sum, if defense counsel was deficient in not calling Mr. Fischbach (which I need not decide), Mr. Booth *does show* there is reasonable probability that

1    show there is a reasonable probability that putting him on the stand would have resulted

2    in acquittal." *Id.*

3           While Booth argues that his procedural default is excusable under *Martinez v.*

4    *Ryan*, 566 U.S. 1 (2012), the Court need not decide that issue because, even if Booth's

5    procedural default is excusable, the Court then must give *Strickland*'s "double deference"

6    to the Commissioner's alternative ruling on the merits. On this point, the Court remains

7    in agreement with Judge Fricke's R&R: "the [C]ommissioner reasonably applied the

8    *Strickland* standard . . . . [Booth] has failed to demonstrate a reasonable probability that

9    but for counsel's failure to introduce Mr. Fischbac[h]'s testimony, the jury's verdict

10   would have been different." Dkt. 20 at 22.

11          Booth's Ground (8) remains dismissed.

12          **3.      Booth's Procedural Default on Ground (7) is Excused.**

13          Booth procedurally defaulted on Ground (7), under which he argues that his trial

14   attorney's assistance was ineffective because he failed to call alibi witnesses.

15          Nevertheless, "[a] prisoner may obtain federal review of a defaulted claim by

16   showing cause for the default and prejudice from a violation of federal law." *Martinez*,

17   566 U.S. at 10. If, under state law, a claim of ineffective assistance of counsel "must be

18   raised in an initial-review collateral proceeding, a procedural default will not bar a federal

19   habeas court from hearing a substantial claim of ineffective assistance" if the petitioner

20   lacked counsel in his collateral proceeding or "counsel in that proceeding was

21   _____

22   putting him on the stand would have resulted in acquittal." Dkt. 20 at 53. It is clear from the context of
     this sentence, however, that the Commissioner omitted the word "not."

1  ineffective." *Id.* at 17. *Martinez* also applies where the state's "procedural framework, by

2  reason of its design and operation, makes it highly unlikely in a typical case that a

3  defendant will have a meaningful opportunity to raise a claim of ineffective assistance of

4  trial counsel on direct appeal." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013). Courts in

5  this district have applied the *Martinez* rule to Washington state defendants. *See, e.g.*,

6  *Mothershead*, 608 F. Supp. 3d 1024, 1028–29 (W.D. Wash. 2022); *Weber v. Sinclair*, No.

7  08-cv-1676 RSL, 2014 WL 1671508, at *8 (W.D. Wash. Apr. 28, 2014).

8      Booth lacked counsel when he filed his PRP. Thus, whether his default is excused

9  depends on whether his ineffective assistance claim in Ground (7) is "substantial." A

10  claim is substantial if the prisoner can "demonstrate that the claim has some merit."

11  *Martinez*, 566 U.S. at 14. In contrast, a claim is insubstantial if "it does not have any

12  merit or . . . it is wholly without factual support." *Id.* at 16.

13      Booth argues that his alibi witness claim is substantial, pointing out the usefulness

14  of each of the four alibi witnesses and their affidavits. *See* Dkt. 37 at 31–35. He argues

15  that his alibi was his whole defense as he testified at trial that, "while he was at the scene

16  of the crime before the shooting, he left before the murders." *Id.* at 32 (citing Dkt. 11-2 at

17  307–14). According to Booth, these alibi witnesses would have corroborated that

18  testimony. *Id.* Notably, Booth asserts that, not only did Hunko fail to call the witnesses at

19  trial, he failed to speak to them at all.

20      The State does not advance any argument regarding the substantiality of Booth's

21  alibi witness claim in its most recent briefing. But it did previously argue in its Answer to

22  Booth's § 2254 petition that his alibi witness argument was without merit. *See* Dkt. 10 at

33–37. There, the State argued that Booth failed to present credible evidence that he ever

informed Hunko of the alleged alibi witnesses. *Id.* at 33–34. The State also argued that

Booth's trial testimony suggested he did not have any alibi witnesses because he stated:

"In my line of work you don't exactly have people like that" when asked whether he had

anyone to verify his alibi. *Id.* at 34 (quoting Ex. 6 at 68). The State also attacked the

witnesses' credibility. *Id.* at 36–37.

The Court cannot say that Booth's alibi witness claim is wholly without merit.

Booth provided four[5] signed affidavits from alleged alibi witnesses who assert Booth was

not at the scene of the crime at the time of the shooting. *See* Dkt. 11-3 at 484, 543, 545,

547. Three of the witnesses agree on where he was at the time (the Red Barn Tavern in

Rochester, Washington), and two of the witnesses assert that they contacted Hunko and

he never responded. Similarly, Booth asserts in his own affidavit that he gave Hunko the

names and numbers of his alibi witnesses and that Hunko abandoned that defense. *Id.* at

496–97. While the witnesses may have some credibility issues, the presently undisputed

assertion that Hunko never even contacted them to investigate the veracity of their claims

is concerning. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) (counsel "has a

duty to make reasonable investigations or to make a reasonable decision that makes

particular investigations unnecessary").

---

[5] One of the alibi witnesses, Ryan McCarthy, later claimed that he did not sign the affidavit. *See* Dkt. 11-4 at 156. Booth argues that there is a question of fact as to whether McCarthy's signature was forged or whether his denial of signing the affidavit (as "a result of his fear that telling the truth would breach his plea agreement") was false. Dkt. 37 at 33.

1    It is of course possible that Hunko did not call the witnesses for a strategic reason.

2    Nevertheless, the Court cannot make that determination on the limited evidence before it.

3    As Booth points out, he waived the attorney-client privilege when he asserted an

4    ineffective assistance claim against Hunko; the State could have made this clear to Hunko

5    and attempted to obtain a statement from him regarding his failure to call or investigate

6    these alleged alibi witnesses. Without more from the State, the Court cannot say Booth's

7    claim is without merit.

8    The Court therefore concludes that *Martinez* is applicable in this case to excuse

9    Booth's procedural default on Ground (7).

10   Where a petitioner has procedurally defaulted and *Martinez* is applicable, the

11   district court should hold an evidentiary hearing to determine whether there has been

12   ineffective assistance of counsel. *Detrich v. Ryan*, 740 F.3d 1237, 1246 (9th Cir. 2013).

13   AEDPA precludes an evidentiary hearing in federal district court, however, "[i]f the

14   applicant has failed to develop the factual basis of a claim in State court proceedings." 28

15   U.S.C. § 2254(e)(2). "A failure to develop the factual basis of a claim is not established

16   unless there is lack of diligence, or some greater fault, attributable to the prisoner or the

17   prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

18   Booth was diligent in pursuing his alibi witnesses argument. He presented five

19   signed affidavits in support of his argument while incarcerated and without the assistance

20   of counsel. A hearing is therefore warranted.

21

22

1    The Court will reinstate and consider Booth's Ground (7). It will hold a hearing, as

2    described further below, to determine whether Hunko's failure to call alibi witnesses in

3    Booth's trial amounted to ineffective assistance of counsel.

4    **C.      Grounds (1)–(4) and (9)**

5          **1.      Booth Did Not Improperly Reframe Grounds (1)–(4) and (9).**

6    The State spends a significant amount of its response brief arguing that Booth

7    changed his argument because he "now argues not that he lost confidence in his attorney,

8    but rather that he could not confide in his attorney." Dkt. 38 at 2. The Court disagrees.

9    The claim is the same—Booth argues that the State's eavesdropping activities made him

10   feel like he could no longer confide in his attorney, causing him to lose confidence in his

11   ability to confer with counsel and in his counsel's ability to provide an adequate defense.

12   The Court will not further entertain this unproductive argument by the State.

13         **2.      The State Court's Ruling was Partially on the Merits.**

14   Booth first argues that the Court of Appeals did not adjudicate most of his claim

15   on the merits and that he is therefore entitled to de novo review. Dkt. 37 at 4–7. He

16   argues that the Court of Appeals adjudicated only a narrow issue on the merits: "whether

17   the State had rebutted the state-law presumption that information was transmitted to the

18   prosecution." *Id.* at 4. The State argues that the state court adjudicated all of Booth's

19   claims on the merits. Dkt. 38 at 7–8.

20   The relevant portion of the Court of Appeals' opinion recites the trial court's

21   relevant factual findings about the State's eavesdropping activities and concludes:

22   "Therefore, we conclude that the trial court's findings support the conclusion that Booth

1    was not prejudiced." Dkt. 20 at 40. In a footnote, the Court of Appeals adds: "Because we

2    conclude that the State showed beyond a reasonable doubt that Booth was not prejudiced,

3    we do not decide whether the inadvertent overhearing of confidential attorney-client

4    communications is a Sixth Amendment violation." *Id.* at 40 n.5.

5        The Court of Appeals thus adjudicated the prejudice portion of Booth's Sixth

6    Amendment claim on the merits, but expressly declined to adjudicate the question of

7    whether unintentional overhearing of privileged communications amounts to a Sixth

8    Amendment violation.

9        The crux of the State's argument in this case is that Booth's prejudice argument—

10   that he was prejudiced because the State's eavesdropping activities caused him to lose

11   confidence in his attorney—is not a viable federal claim. The Court of Appeals' decision

12   that Booth was not prejudiced is afforded AEDPA deference because it was adjudicated

13   on the merits. The initial question, whether there is any violation of the Sixth

14   Amendment, is reviewed de novo, however, because the Court of Appeals expressly

15   declined to consider the issue.

16       **3.    The Court of Appeals' Decision was an Unreasonable Application of Federal Law.**

17       Booth argues, generally, that he was prejudiced by the State's interference in his

18   attorney-client relationship because it chilled his ability to communicate with his trial

19   counsel. Dkt. 37 at 7–11. In his supplemental briefing, Booth relies primarily on the

20   standard set forth in *Weatherford v. Bursey*, 429 U.S. 545 (1977). *Id.* In his previous

21

22

1   briefing on this issue, and while proceeding pro se, Booth relied on *United States v.*

2   *Irwin*, 612 F.2d 1182 (9th Cir. 1980). *See generally* Dkt. 16.

3        The State argues that Booth cannot rely on *Irwin* to establish prejudice because it

4   does not represent clearly established federal law. Dkt. 36 at 4–10. It argues that the only

5   way to show prejudice is under the standard explained in *Weatherford*. *Id.* It argues in the

6   alternative that, even if *Irwin* does represent clearly established federal law, Booth still

7   failed to show a violation of the rule. *Id.* at 10–13.

8        Under 28 U.S.C. § 2254(d):

9        An application for a writ of habeas corpus on behalf of a person in
10   custody pursuant to the judgment of a State court shall not be granted with
   respect to any claim that was adjudicated on the merits in State court
   proceedings unless the adjudication of the claim—
11        (1) resulted in a decision that was contrary to, or involved an
   unreasonable application of, clearly established Federal law, as determined
12      by the Supreme Court of the United States; or
     (2) resulted in a decision that was based on an unreasonable
13      determination of the facts in light of the evidence presented in the State
   court proceeding.

14   For the purposes of § 2254(d), "clearly established" federal law must be based on

15   Supreme Court holdings, and the law must have been clearly established at the time the

16   state court reached its decision. *Jones v. Ryan*, 52 F.4th 1104 (9th Cir. 2022). A law is not

17   "clearly established" if it is based on only Supreme Court dicta or circuit precedent, even

18   where that circuit precedent is binding. *Id.* Nevertheless, circuit precedent may be helpful

19   in determining whether clearly established federal law exists. *See, e.g.*, *Carey v.*

20   *Musladin*, 549 U.S. 70, 76–77 (2006).

21

22

1    A decision is "contrary to" clearly established federal law "if the state court

2    arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

3    law" or "if the state court confronts facts that are materially indistinguishable from a

4    relevant Supreme Court precedent and arrives at [an opposite result]." *Williams v. Taylor*,

5    529 U.S. 362, 405 (2000). For a decision to be an "unreasonable application" of clearly

6    established federal law, it must be objectively unreasonable. In other words, to obtain

7    habeas relief under the "unreasonable application" standard, "a state prisoner must show

8    that the state court's ruling on the claim being presented in federal court was so lacking in

9    justification that there was an error well understood and comprehended in existing law

10   beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86,

11   103 (2011).

12   Despite the narrow interpretation of § 2254(d), AEDPA does not "require state

13   and federal courts to wait for some nearly identical factual pattern before a legal rule

14   must be applied." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (quoting *Carey*, 549

15   U.S. at 81 (Kennedy, J., concurring in judgment). "The statute recognizes, to the

16   contrary, that even a general standard may be applied in an unreasonable manner." *Id.*

17   The threshold issue in this case is whether it is clearly established that a criminal

18   defendant can be prejudiced when the State interferes with his relationship with defense

19   counsel, ultimately causing him to lose confidence that he can confide in his attorney and

20   thereby infringing on his ability to participate in his own defense.

21

22

1    Booth argues that the law is clearly established in *Weatherford*. The State argues

2    that *Weatherford* supports this proposition only in dicta and that the Ninth Circuit in

3    *Irwin* relied not on Supreme Court precedent, but on other circuit case law.

4    As an initial matter, the Court agrees that *Weatherford* is factually distinct from

5    this case. In *Weatherford*, an undercover agent was present for two pretrial meetings

6    between the criminal defendant, Bursey, and his defense counsel. Bursey and his counsel

7    did not discuss the criminal case or trial strategy and the agent did not subsequently pass

8    along any information from the meetings to the prosecution or any other relevant party.

9    The agent sat in on the meetings apparently to only maintain his cover. The Supreme

10   Court held that the Sixth Amendment was not violated because there was "no tainted

11   evidence in [the] case, no communication of defense strategy to the prosecution, and no

12   purposeful intrusion by [the undercover agent]." *Id.* at 558.

13   The constitutional problem in this case is significantly different. Booth does not

14   argue that his Sixth Amendment rights were violated simply because the State overheard

15   conversations between him and his counsel. He also does not argue that there was any

16   tainted evidence or communications passed on to the prosecution. He instead argues that

17   the State interfered with his ability to openly communicate with counsel because he knew

18   the State was listening in on their conversations. If Booth's allegations are true, this

19   intrusion into the attorney-client relationship interfered with his ability to participate in

20   his own defense, and, consequently, with his counsel's ability to provide an adequate

21   defense.

22

1     Under the Sixth Amendment, a criminal defendant has the right "to have the

2 assistance of counsel for his defense." The relevant portion of *Weatherford* in relation to

3 Booth's argument is found in a footnote in which the Supreme Court quotes the federal

4 government's briefing in *Hoffa v. United States*: "[T]he Sixth Amendment's assistance-

5 of-counsel guarantee can be meaningfully implemented only if a criminal defendant

6 knows that his communications with his attorney are private and that his lawful

7 preparations for trial are secure against intrusion by the government, his adversary in the

8 criminal proceeding." *Weatherford*, 429 U.S. at 554 n.4 (quoting Brief for the United

9 States at 71, *Hoffa v. United States*, 385 U.S. 293 (Sept. 26, 1966) (Nos. 32, 33, 34, 35)).

10 The Court goes on to explain that "[o]ne threat to the effective assistance of counsel

11 posed by government interception of attorney-client communications lies in the inhibition

12 of free exchanges between defendant and counsel because of the fear of being

13 overheard." *Id.*

14     *Weatherford* stands for the principle that, to show a Sixth Amendment violation

15 based on government intrusion into the attorney-client relationship, the defendant must

16 have been prejudiced. "[M]ere government intrusion into the attorney-client

17 relationship . . . is not itself violative of the Sixth Amendment right to counsel." *United

18 Irwin*, 612 F.2d at 1186–87. While the facts of *Weatherford* are such that the type of

19 prejudice that mattered in that case was the passing along of information to the

20 prosecution or the use of such information at trial, *Weatherford* did not suggest that is the

21 only way of showing prejudice. Rather, as in many cases, the Supreme Court set forth a

22 general rule—that a Sixth Amendment government intrusion claim requires a showing of

1    prejudice. *See Chaidez v. United States*, 568 U.S. 342 (2013) ("[A] case does not

2    announce a new rule when it is merely an application of the principle that governed a

3    prior decision to a different set of facts." (cleaned up)).

4        Indeed, *Weatherford* suggested several ways that prejudice may result: if the

5    intruding undercover agent testified about the overheard conversations at trial; if "the

6    State's evidence originated" from the intrusions; if the prosecution learned from the

7    intrusions about defense trial preparations; or if the overheard conversations are "used *in*

8    *any other way* to the substantial detriment of the criminal defendant." 429 U.S. at 554

9    (emphasis added). Following that list, the Supreme Court added via footnote: "One threat

10   to the effective assistance of counsel posed by government interception of attorney-client

11   communications lies in the inhibition of free exchanges between defendant and counsel

12   because of the fear of being overheard." *Id.* at 554 n.4.

13       Perhaps the State is correct that this is all merely dicta. Nevertheless, it is the

14   Supreme Court's indication of what may be considered prejudicial under the general rule

15   it established in *Weatherford*. And while the Court cannot rely on circuit precedent to

16   *establish* federal law in this context, it may look to circuit precedent to support its

17   determination that clearly established law exists. *See Carey*, 549 U.S. at 76–77. Booth

18   also cites various cases from other circuits that further supports the idea that this type of

19   prejudice is not novel—it is clearly established. Dkt. 41 at 8 (collecting cases).

20       Moreover, the right to participate in one's own defense with the assistance of

21   counsel is so fundamental to the Sixth Amendment, it is unsurprising the Supreme Court

22   has never adjudicated an identical set of facts. Indeed, the Supreme Court itself pointed

1 | out that the United States has twice acknowledged in cases before it that the Sixth

2 | Amendment's assistance-of-counsel guarantee is meaningless unless the defendant knows

3 | his attorney-client communications are private and free from government intrusion. *See*

4 | *Weatherford*, 429 U.S. 554 n.4 (quoting Brief for the United States at 71, *Hoffa*, 385 U.S.

5 | 293)).

6 |       The Court also notes that this case could likely be decided under another theory:

7 | that the government's intrusion into the attorney-client relationship in this case amounts

8 | to *deprivation of counsel* under the Sixth Amendment. The State could not possibly argue

9 | that there would be no Sixth Amendment violation if the State refused to let a criminal

10 | defendant meet with or speak to his attorney prior to trial. *See, e.g.*, *Chandler v. Fretag*,

11 | 348 U.S. 3, 10 (1954) ("[A] defendant must be given a reasonable opportunity to employ

12 | and consult with counsel; otherwise, the right to be heard by counsel would be of little

13 | worth."); *Powell v. Alabama*, 287 U.S. 45, 59 (1932) ("[A] defendant, charged with a

14 | serious crime, must not be stripped of his right to have sufficient time to advise with

15 | counsel and prepare his defense.").

16 |       The situation is not much different here. In Booth's version of events, he was

17 | unable to speak with his lawyer and participate in his own defense because he could not

18 | freely communicate with counsel. Government interference that inhibits a criminal

19 | defendant's ability to speak with his counsel, depending on the specific facts, could be

20 | effectively the same as the government physically depriving the defendant an opportunity

21 | to speak with his counsel.

22 |

1    Moreover, while *Strickland v. Washington* is frequently cited in cases determining

2    counsel's own ineffective assistance, *Strickland* makes clear that the "Government

3    violates the right to effective assistance when it interferes in certain ways with the ability

4    of counsel to make independent decisions about how to conduct the defense." 466 U.S.

5    668, 686 (1984). Nearly a decade before *Strickland*, the Supreme Court explicitly held

6    that "an order preventing petitioner from consulting his counsel 'about anything' during a

7    17-hour overnight recess between his direct-and cross-examination impinged on his right

8    to the assistance of counsel guaranteed by the Sixth Amendment." *Geders v. United*

9    *States*, 425 U.S. 80, 91 (1976).

10    The Sixth Amendment, at its core, guarantees a criminal defendant the right to

11    effective assistance of counsel. It is beyond debate that the State can violate that right by

12    interfering with the attorney-client relationship such that the defendant is unable to

13    communicate with counsel, thereby depriving him of his right to effective assistance of

14    counsel.

15    The Court of Appeals' decision was an unreasonable application of clearly

16    established federal law. It neglected to consider that Booth could demonstrate prejudice

17    by showing that the state's interference into his relationship with counsel rendered him

18    unable to confide in counsel and therefore deprived him of effective assistance of

19    counsel.

20    ***

21    The Court will hold an evidentiary hearing on Booth's Grounds (1)–(4), (7), and

22    (9). As to Grounds (1)–(4) and (9), the Court will consider whether the State's

eavesdropping activities violated Booth's Sixth Amendment rights. The parties should be prepared to address all relevant issues, including: (1) whether, in order to violate the Sixth Amendment, the State's eavesdropping had to be purposeful; (2) whether the State's eavesdropping in this case was purposeful; (3) whether the State's eavesdropping activities actually prejudiced Booth (i.e., were there issues Booth would have spoken to counsel about that could have made a difference in the ultimate outcome of his case).

As to Ground (7), the Court will consider whether Hunko's alleged failure to investigate and call Booth's alleged alibi witnesses amounted to ineffective assistance of counsel.

The parties shall submit simultaneous pre-hearing briefing on these issues. The parties' opening briefs are due on Friday, April 21, 2023, and shall not exceed twelve pages. The parties may submit simultaneous response briefs by Friday, April 28, 2023, which shall not exceed seven pages. The evidentiary hearing will be held on Tuesday, May 2, 2023, beginning at 10:00 AM. After the hearing, the Court may require post-hearing briefing.

### III.  ORDER

The Court having considered the R&R, Petitioner's objections, and the remaining record, does hereby order as follows:

(1)    The R&R is **ADOPTED in part**;

(2)    The Court **RESERVES RULING** on Grounds (1)–(4) and (9);

(3)    Booth's Ground (8) remains **DISMISSED with prejudice**;

1    (4)    The Court's Order, Dkt. 28, is **VACATED** only with respect to Booth's

2           Ground (7) and the Court **RESERVES RULING** on Ground (7);

3    (5)    The parties are **DIRECTED** to submit supplemental briefing as described

4           above and to **APPEAR** for an evidentiary hearing on May 2, 2023;

5    (6)    The Clerk shall **RENOTE** Booth's Objections to Judge Fricke's R&R, Dkt.

6           27, to the Court's May 2, 2023 calendar.

7    Dated this 5th day of April, 2023.

8

9

10                              BENJAMIN H. SETTLE
                                United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 26